IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE COMPANY,

    *Plaintiff*,

    v.

                                      Civil Action No. ELH-11-2898

JACK CHERRY, *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

This is a declaratory action regarding coverage under an insurance policy (the "Policy") issued by Allstate Insurance Company ("Allstate"), plaintiff, to Jack Cherry, defendant. *See* Complaint (ECF 1). The policy was in effect from 1990 through June 1991. *Id.* ¶ 8. In 2006, Mr. Cherry and other defendants were sued in the Circuit Court for Baltimore City in a lead paint poisoning suit brought by two brothers, Antoine and Gerard Grant. *See Antoine Grant, et al. v. Estate of Meyer Jacobs, et al.*, No. 24-C-06-005454 (Cir. Ct. Balt. City) (the "Tort Action"); *see also* Ex.B to Complaint (ECF 1-3) (complaint in Tort Action). In the Tort Action, the Grants alleged negligence by Cherry in his role as owner or property manager of a dwelling in Baltimore City, in which the Grants resided in the early 1990s, when they were children (the "Property"). They asserted the same claims against J.C. Enterprises, Inc. ("JCEI") and the Estate of Meyer Jacobs (the "Jacobs Estate").[1]

---

[1] The Grants alleged that Mr. Jacobs, now deceased, and JCEI were also owners or managers of the Property. In Paragraph 15 of its Complaint here, Allstate asserts that Mr. Cherry is an "officer, shareholder and employee" of JCEI. However, according to an affidavit filed by Mr. Cherry, JCEI was Cherry's trade name and "is not now nor was it ever a Maryland corporate entity registered to conduct business in the state of Maryland." Affidavit of Jack Cherry ("Cherry Aff."), Ex.1 to ECF 4, at 13. In any event, according to Allstate, neither Mr. Jacobs nor JCEI was insured under the Policy; the insureds were Mr. Cherry and his wife, Dawn Cherry (who is not a party to this suit or the Tort Action). *See* Affidavit of Kathy Collard ¶ 3 ("Collard Aff."), Ex.A to Complaint (ECF 1-2).

Allstate initiated this suit against Mr. Cherry to resolve whether the Policy provides coverage for Mr. Cherry's liability in the Tort Action.  Allstate has also named Antoine Grant, JCEI, and the Jacobs Estate as defendants, claiming they are "parties in interest."[2]  Mr. Cherry and JCEI (collectively, the "Cherry Defendants") have filed a "Motion to Dismiss for Lack of Personal Jurisdiction and/or Motion to Transfer Venue" to the Middle District of Florida ("Motion") (ECF 4), which Allstate opposes.  *See* "Plaintiff's Response to Jack Cherry's Motion to Dismiss and/or Transfer Venue" (ECF 5) (collectively with its supporting memorandum, ECF 5-1, "Response").[3]

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, the Complaint will be dismissed.

## Background

### A.  Factual Background[4]

On May 11, 1990, Allstate issued the Policy to Mr. Cherry and his wife.  *See* Collard Aff. ¶ 3.  Allstate has submitted a purported copy of the Policy along with its Complaint.  *See* Policy,

---

[2] Allstate did not name Gerard Grant as a party.  The unofficial public docket for the Tort Action, which is available on the Maryland Judiciary's "Case Search" website (http://casesearch.courts.state.md.us/), suggests that Gerard Grant passed away during the pendency of the case; the docket contains several filings by the "Estate of Gerard Grant."  However, Gerard Grant's estate is also not a party to this case.

[3] At the time that the Motion was filed, the Tort Action was scheduled to be tried in state circuit court on November 30, 2011.  Motion at 2.  The parties have not notified this Court regarding any further proceedings in the Tort Action.  The unofficial "Case Search" docket for the Tort Action indicates that the trial was postponed, and ultimately a settlement order was entered on February 21, 2012.  However, the "Case Search" docket does not reflect the terms of the settlement, nor have the parties provided any information about it.  In any event, there is no indication that the settlement has rendered moot Allstate's declaratory claim.

[4] Because the Motion seeks dismissal for lack of personal jurisdiction, the facts are drawn from the Complaint and the Motion papers, including affidavits and other exhibits, with all disputes of fact and reasonable inferences from the facts resolved in favor of the plaintiff.  *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Ex.C to Complaint (ECF 1-4).  The Policy, which was assigned policy number 052229354, was a "Personal Umbrella Policy" that provided coverage to the Cherrys, subject to certain conditions and exclusions, "when an insured becomes legally obligated to pay for personal injury or property damage" caused by an "occurrence," *i.e.*, "an accident or a continuous exposure to conditions."  Policy at 2, 4; *see also* Collard Aff. ¶ 3.  The Policy contains the signatures of Allstate's secretary and its president, and states that Allstate "caused" the Policy to be signed by those officers "at Northbrook Illinois."  Policy at 11.  The copy of the Policy submitted by Allstate does not contain the signature of either Mr. or Ms. Cherry.[5]

When the Policy was issued in 1990, Mr. Cherry and his wife resided in Columbia, Maryland.  Collard Aff. ¶ 5.  Kathy Collard, an Allstate Senior Field Support Representative, asserts in an affidavit that, based on her review of Allstate's records, the Policy was issued to the Cherrys "in the State of Maryland," *id.* ¶ 6, through an Allstate agent, Bonnie Kurz, whose office was located in Glen Burnie, Maryland.  *Id.* ¶ 4.[6]  According to Ms. Collard, the Policy was in force from June 27, 1990, until June 27, 1991.  *Id.* ¶ 3.

According to the complaint in the Tort Action, Antoine Grant, who was born in 1986, and Gerard Grant, who was born in 1985, resided with their mother at the Property between 1988 and 1990.  *See* Ex.B to Complaint at Count I ¶ 3 & Count III ¶ 3.  The Tort Action further alleged that, during the time that the Grants resided at the Property, each of the defendants (Mr. Jacobs, Mr. Cherry, and JCEI) "owned and/or controlled and/or managed" the Property, "either

---

[5] The Cherry Defendants claim that the copy of the Policy submitted with Allstate's Complaint "is incomplete insofar as it does not reflect the actual named insured, any additional insureds, the inception date of the policy, the term, the premium, the limits, and any endorsements to the policy."  Response at 9 n.1.  However, it is unnecessary for present purposes to resolve the authenticity of the copy of the Policy or to explore the precise terms of coverage (including the exclusions that Allstate claims negate coverage for the Tort Action).

[6] Allstate characterizes the Policy as "negotiated and signed in the State of Maryland."  Response at 8.

individually or by the use of agents, servants and/or employees," and that each defendant "managed, supervised, maintained and rented" the Property "to tenants." Ex.B to Complaint at Count I ¶ 1, Count V ¶ 1, Count IX, ¶ 1.  In its Complaint in this case, Allstate alleges that Mr. Jacobs was the "true owner" of the Property, and that JCEI "and/or Jack Cherry were under contract with Meyer Jacobs . . . to manage" the Property.  Complaint ¶ 14.

In 2001, Mr. Cherry and his wife moved to Florida.  Cherry Aff. ¶ 3.  According to Mr. Cherry, he no longer owns any real property in Maryland and no longer regularly transacts business here.  *Id.* ¶ 4.  Indeed, he avers that he has not "done so since 2001."  *Id.*  As noted, Mr. Cherry also asserts that JCEI was merely a "trade name," and was never an incorporated business entity in the state of Maryland.  *Id.* ¶ 5.

## B.  *Cherry I*

This is Allstate's second attempt to obtain a judicial declaration as to whether the Policy covers Mr. Cherry's liability in the Tort Action.  *See Allstate Insurance Co. v. Cherry*, No. L-10-2289 (D. Md. May 25, 2011) ("*Cherry I*") (Legg, J.).[7]   In *Cherry I,* by a "Memorandum to Counsel" dated May 25, 2011, Judge Benson E. Legg granted a motion filed by the Cherry Defendants, similar to the Motion at bar, seeking dismissal for lack of personal jurisdiction or, alternatively, transfer of venue.  As Judge Legg ruled that personal jurisdiction was not established, he did not reach the venue issue.  He reasoned, *Cherry I*, ECF 10 at 3-4 (some internal citations omitted):

> Allstate's opposition consists of a single page, which declines to address, or even mention, Cherry's challenges to this Court's jurisdiction over him.  It merely recites that this is a diversity case arising under 28 U.S.C. § 1332. . . .  It presents no evidence, nor does it proffer any facts whatsoever, and, therefore, offers

---

[7] Allstate has submitted a copy of Judge Legg's ruling in *Cherry I* as Exhibit 6 to its Response (ECF 5-7), although the copy appears to have been interleaved inadvertently with pages from the Cherry Defendants' Motion.  Of course, the Court can also "properly take judicial notice of its own records."  *Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990).

nothing that would lead the Court to believe that exercise of personal jurisdiction over Cherry would be proper.  From this, the Court can only conclude that Allstate concedes Cherry's legal arguments and agrees that he cannot be sued in this Court.

Nor does the other evidence in the record alter this conclusion.  First, Cherry clearly lacks the sort of continuous and systematic contacts with Maryland that would confer general jurisdiction.  He has submitted an affidavit, unchallenged by Allstate, in which he avers that he moved to Florida in 2001 and since that time has not resided, transacted business, or owned real property in Maryland.

Second, there is insufficient evidence to establish specific jurisdiction.  The contacts relevant to this suit are, of course, the negotiation and execution of the insurance policy and not the events at issue in the [Tort Action].  *See Transcontinental Ins. Co. v. Eastern Steel Constructors Inc.*, Civil No. CCB-07-2243, 2008 WL 2466558 (D. Md. June 10, 2008).  Neither party has presented any evidence as to where or under what circumstances Allstate and Cherry entered into the policy.  The policy itself, submitted as an exhibit to the Complaint, merely recites that "Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois," and ends with the aforementioned signatures.

As the party bearing the burden of establishing jurisdiction, Allstate has failed to put forth sufficient evidence to make out a *prima facie* case.

Accordingly, Judge Legg dismissed Allstate's complaint in *Cherry I*, "without prejudice," and directed the Clerk to close the case.  *Cherry I*, ECF 10 at 5 (capitalization altered).[8]  In particular, Judge Legg did not expressly grant leave to amend, nor did Allstate seek leave to amend.  No further docket activity occurred in *Cherry I*.

Over four months later, on October 11, 2011, Allstate filed its Complaint in this case. The allegations are virtually identical to those in *Cherry I*.

---

[8] Judge Legg also dismissed the remaining defendants in *Cherry I*, who (as here) were the other parties in the Tort Action.  He held that, because the other defendants were "named solely as parties in interest, the Court [was] left with no claims to adjudicate" after the dismissal as to Mr. Cherry.  *Cherry I*, ECF 10 at 5.

**Discussion**

A.  Subject Matter Jurisdiction

Before addressing the merits of the Motion, I must consider the issue of subject matter jurisdiction.  Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, ___ U.S. ___, 130 S. Ct. 1181, 1193 (2010); *accord Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006).  Indeed, "[n]o court can ignore" a jurisdictional defect, once it is discovered; "rather a court, noticing the defect, must raise the matter on its own." *Wis. Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998).

Allstate asserts that this Court has subject matter jurisdiction on the basis of diversity of citizenship.  *See* 28 U.S.C. § 1332(a)(1).  Diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added).  The Complaint does not establish that diversity jurisdiction is satisfied; it does not adequately allege the parties' citizenship.

According to Allstate, it is "a corporation domiciled in the State of Illinois," Complaint ¶ 1, but that contention does not address the proper metric for corporate citizenship.  A corporation is a citizen of each state in which it is incorporated and of the state where its principal place of business, or "nerve center," is located.  *See* 28 U.S.C. § 1332(c)(1); *Hertz*, 130 S. Ct. at 1193; *see also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919-21 (5th Cir. 2001) (remanding to dismiss for lack of subject matter jurisdiction where Allstate's allegations of citizenship were similarly insufficient to establish diversity).

In addition, Allstate claims that Mr. Cherry is a "resident" of Summerfield, Florida, and

that Antoine Grant is a "resident" of Baltimore City, Maryland. Complaint ¶¶ 2, 5.  However, a natural person's "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998) (internal citation omitted).

Moreover, the Complaint contains no allegations as to the citizenship of JCEI or the Jacobs Estate.  As to JCEI, if it is only a trade name of Mr. Cherry, it is not a different party in its own right; if it is an actual corporation, its citizenship is determined by 28 U.S.C. § 1332(c)(1). As to the Jacobs Estate, no information as to the citizenship of the late Mr. Jacobs is contained in the Complaint.    But, a decedent's estate must be sued through the estate's personal representative, who is statutorily "deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2); *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93-94 (2005); *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010) ("Where an estate is a party, as in this case, the citizenship that counts for diversity purposes is that of the decedent.").

In sum, this Court might possess diversity jurisdiction, but it is not possible to determine whether it does from Allstate's Complaint.[9]  Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint."  *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936) (holding that "the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleadings the facts essential to show jurisdiction")), *cert. denied*, 528 U.S. 1155 (2000).  The burden is on the party invoking the jurisdiction of the federal court to establish subject matter jurisdiction.  *See Hertz*, 130 S. Ct. at 1194 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  Because the

---

[9] Nor is the uncertainty resolved by the balance of the record.

Complaint fails to allege facts that could support subject matter jurisdiction, Allstate's Complaint will be dismissed, without prejudice.

Ordinarily, when faced with such ambiguous pleading of diversity jurisdiction, the Court would alert the parties to the apparent jurisdictional defect and give them an opportunity to cure it before dismissing the case. Here, however, even if the Court possesses subject matter jurisdiction, I would dismiss the claims against Mr. Cherry for lack of personal jurisdiction, due to the preclusive effect of *Cherry I.* I turn to that alternative basis for dismissal now.

### B.  Personal Jurisdiction

#### 1.  Rule 12(b)(2) Standard

A motion to dismiss for lack of personal jurisdiction arises under Rule 12(b)(2) of the Federal Rules of Civil Procedure. "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2). *See generally* 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1351, at 274-313 (3d ed. 2004, 2011 Supp.). Rather, the district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers*, *supra*, 561 F.3d at 276. In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst*, *supra*, 334 F.3d at

396.  However, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'"   *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

Rule 4(k)(1) of the Federal Rules of Civil Procedure authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located.   *Carefirst*, *supra*, 334 F.3d at 396.   Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."   *Id.*

Maryland's long-arm statute is codified at Md. Code (2006 Repl. Vol., 2011 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article.   It authorizes "personal jurisdiction over a person, who directly or by an agent," *inter alia*, "[t]ransacts any business or performs any character of work or service in the State."   Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution."   *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)).   "Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."   *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710

(4th Cir. 2002).  Thus, the constitutional due process inquiry is paramount.

The United States Supreme Court has long held that personal jurisdiction over a non-resident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable."  *ALS Scan*, 293 F.3d at 712; *see Consulting Engineers, supra*, 561 F.3d at 278-79.

The "minimum contacts" test is met where the defendant has "purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state."  *Consulting Engineers*, 561 F.3d at 278.  A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  Generally, the court must consider the prong of constitutional reasonableness "[i]f, and only if" the minimum contacts test is met. *Consulting Engineers*, 561 F.3d at 278.  The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional."  *Burger King*, 471 U.S. at 477.

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific."  *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  The difference between the two types of jurisdiction turns on the amount

and nature of the contacts with the forum state that are necessary to meet the "minimum contacts" threshold.  The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)) (internal citations omitted).  In other words, "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

### 2.  Collateral Estoppel

In this case, the Court need not—indeed, as a matter of sound judicial policy, it should not—make an independent determination as to whether the exercise of personal jurisdiction over Mr. Cherry is proper.  This is because that determination was already made in *Cherry I.*  In sum, the doctrine of collateral estoppel bars relitigation here as to the issue of personal jurisdiction.

Under principles of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  In other words, collateral estoppel "bars the relitigation of specific issues that were actually determined in a prior action," *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008), so long as the "'party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate'" the issue.  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th

Cir. 1998)).   The doctrine of collateral estoppel is founded on the demands of "[j]udicial efficiency and finality." *In re Microsoft*, 355 F.3d at 325.

In the absence of collateral estoppel, a party would be perpetually free to relitigate issues, expending the resources of the court and the party's adversary by adding new allegations or arguments each time around, in the hope of eventually stumbling upon success.   The policy of issue preclusion serves the salutary purpose of forcing a party to make its claim once, as best it can, the first time.

To be sure, the Cherry Defendants have not invoked the doctrine of collateral estoppel by name.   However, they point out that this suit "is Allstate's second bite at the same apple," Motion at 1, and assert that Allstate's claim here is "virtually identical" to *Cherry I*, except that the Complaint is now accompanied by Ms. Collard's affidavit, which provides the date and place that the Policy was issued.   *Id.* at 2.   The Cherry Defendants argue: "Rather than appeal the Order in [*Cherry I*], or properly file this case timely in the [M]iddle [D]istrict of Florida," where personal jurisdiction over Mr. Cherry is unquestioned, Allstate "instead waited until the month before trial in the [Tort Action] to attempt to disclaim coverage." *Id.* at 3.   They contend that "Allstate's actions are prejudicial to Cherry, especially given this Court's order [in *Cherry I*] dismissing this matter for lack of personal jurisdiction." *Id.*

In my view, the Cherry Defendants' argument is sufficient to raise the issue of collateral estoppel.   But, even if it were not, collateral estoppel implicates "important institutional interests of the court," and may "be properly raised and considered *sua sponte*." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (concluding that policy of "avoiding relitigation" justified *sua sponte* consideration of defense of collateral estoppel)); *accord Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir.

- 12 -

2003); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068-69 (8th Cir. 1997); *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 130 (7th Cir. 1996).  The Second Circuit well explained the reasons for *sua sponte* consideration of collateral estoppel in *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001):  "[P]rinciples of preclusion involve more than the rights and interests of the parties.  They also serve important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions."

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *accord Allen*, 449 U.S. at 96.  Because *Cherry I* was decided in federal court, the federal law of collateral estoppel governs.   Under federal law, collateral estoppel applies when the following five criteria are met:

(1) The "'issue sought to be precluded is identical to one previously litigated'";

(2) The "issue was actually determined in the prior proceeding";

(3) Determination of the issue was "'a critical and necessary part of the decision in the prior proceeding'";

(4) The "prior judgment is final and valid"; and

(5) The "party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum.'"

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2005) (quoting *Sedlack*, 134 F.3d at 224); *accord Martin v. Am. Bancorp. Retirement Plan*, 407 F.3d 643, 653 (4th Cir. 2005); *In re Microsoft*, 355 F.3d at 326.

Without question, the first three criteria are met in this case.  In *Cherry I*, Judge Legg resolved precisely the same question of personal jurisdiction over Mr. Cherry that is at issue here.  The issue was actually determined and was the primary basis for dismissal of the case.

*Cherry I* is also a final and valid judgment, satisfying the fourth criterion for collateral estoppel.  Allstate notes that Judge Legg dismissed *Cherry I* "without prejudice," and suggests

- 13 -

that he did so "to give Plaintiff an opportunity to re-file with a more precise statement on specific

jurisdiction." Response at 3. However, Judge Legg did not expressly grant Allstate leave to

amend its complaint. Instead, he directed the Clerk to close the case. Thus, he "did not merely

dismiss the complaint, but dismissed the 'action . . . in its entirety.'" *Chao v. Rivendell Woods,*

*Inc.*, 415 F.3d 342, 345 (4th Cir. 2005) (quoting *Domino Sugar Corp. v. Sugar Workers Local*

*Union 392*, 10 F.3d 1064, 1066 (4th Cir. 1993)). Such a dismissal is a final order, even if

entered "without prejudice." *Id.* (citing *Domino Sugar*).

To be sure, "[d]ismissals without prejudice do not bar subsequent suits by *res judicata.*"

*Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 473 (4th Cir. 1993). Therefore,

*Cherry I* does not have the effect of claim preclusion, *i.e.*, barring any future suit on the same

cause of action. *See Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir.

2009) (discussing res judicata); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161-62 (4th

Cir. 2008) (same). But, "a dismissal can be without prejudice yet have preclusive effect" by way

of collateral estoppel. *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010). In particular, "a

jurisdictional ruling on an issue that has been fully and fairly adjudicated is barred from

subsequent challenge by the doctrine of collateral estoppel." *Id.* In other words, "a jurisdictional

dismissal that does not constitute a judgment on the merits so as to completely bar further

transactionally-related claims still operates to bar relitigation of issues actually decided by that

former judgment." *Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1069 (4th

Cir. 1993); *see also Brereton v. Bountiful City*, 434 F.3d 1213, 1218-19 (10th Cir. 2006); *Kasap*

*v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("[U]nder

principles of issue preclusion, even a case dismissed *without* prejudice has preclusive effect on

the jurisdictional issue litigated.") (emphasis in original).

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848 (9th Cir. 1997), is instructive.  In that case, the Ninth Circuit considered the issue-preclusive effect of a prior dismissal for improper venue, on the basis of a contractual forum selection clause.[10]  The prior dismissal was without prejudice, yet the *Offshore* Court held that it was entitled to collateral estoppel effect.  The court said, *id.* at 851:

> In such a case, dismissal is without prejudice to refiling in the proper venue.  In the proper venue, or forum, the merits can be litigated. . . .  Because a dismissal to enforce a forum selection clause is not a determination of the merits of any cause of action, it is appropriately "without prejudice" so that the merits can be litigated elsewhere.  But it is a determination on the merits of the applicability, and enforceability, of the clause itself.  If the order becomes final (as will happen if it is left unappealed), it is preclusive when the issues and the parties remain the same.

The Eighth Circuit's decision in *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110 (8th Cir. 1999), is also illuminating.  In that case, the plaintiff filed a first suit in Missouri state court, which was litigated to a final verdict.  On appeal, the Missouri Court of Appeals reversed and directed that the action be dismissed without prejudice for lack of personal jurisdiction.  *See id.* at 1111.  The plaintiff then filed a second action against the defendant in Missouri state court, which the defendant removed to federal court.  *See id.*  The federal court dismissed for lack of personal jurisdiction on the basis of collateral estoppel, "'because the personal jurisdiction issue has already been decided by the Missouri courts.'"  *Id.* (quoting district court).

_____

[10]  To be sure, matters concerning forum selection clauses are resolved as an issue of venue, under Rule 12(b)(3), rather than personal jurisdiction, under Rule 12(b)(2).  Nevertheless, I find *Offshore* persuasive, because forum selection clauses permit parties to an agreement, in essence, to contract around principles of personal jurisdiction by consenting to resolve their disputes in specified tribunals.  *See Burger King, supra*, 471 U.S. at 471 n.14.  *See also Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (stating that "'personal jurisdiction is waivable and . . . parties can, through forum selection clauses and the like, easily contract around any rule we promulgate,'" and that "'[o]bviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction'") (citations omitted).

The Eighth Circuit reversed, opining that "the preclusion issue is not so cut-and-dried," *id.*, because personal jurisdiction is evaluated "at the time the suit is commenced." *Id.* at 1112. Thus, the court reasoned, the "issue of whether the Missouri trial court had personal jurisdiction over [defendant] when [plaintiff] commenced his first suit in November 1993 is not identical to the issue whether that court had personal jurisdiction over [defendant] when the second suit was filed in December 1997." *Id.* However, the *Pohlmann* Court emphasized the narrowness of its holding. It stated that "an issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties (in the older terminology, the first adjudication creates a collateral estoppel)," and recognized that "[m]any cases have given this kind of preclusive effect to rulings on personal jurisdiction as well as other jurisdiction issues." *Id.* at 1112. Therefore, the court reasoned that, when a dismissal for lack of personal jurisdiction becomes final, "the adjudicated jurisdictional facts will be given preclusive effect, and any attempt by plaintiff to file a second suit . . . will result in a quick dismissal, *unless* critical jurisdictional facts have changed in the interim." *Id.* at 1113 (emphasis in original). It was only because of the lengthy time period between the two cases, caused by the litigation of the first case to final verdict and appeal, that the jurisdictional facts had changed.

Here, there is no suggestion that the factual basis for personal jurisdiction has changed between *Cherry I* and the initiation of this case a few months later. Assuming, *arguendo*, that the addition of Allstate's affidavit evidence as to when and where the Policy was issued might alter the jurisdictional analysis, the jurisdictionally relevant acts occurred over twenty years ago.

I turn, then, to the final criterion for collateral estoppel, which is whether the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue. It is abundantly clear that Allstate had that opportunity. As noted, in *Cherry I* the Cherry Defendants

filed a motion to dismiss for lack of personal jurisdiction or to transfer venue that was almost identical to the Motion here. As Judge Legg observed, Allstate responded to that motion with a single-page opposition that did not even mention the issue of personal jurisdiction.[11] After Judge Legg granted the motion to dismiss in *Cherry I*, Allstate did not move to alter or amend the judgment, nor did it seek leave to amend its complaint to include more detailed allegations as to personal jurisdiction. And, it never exercised its right to challenge the ruling by way of an appeal.

In sum, I find that all of the criteria for collateral estoppel are met. Allstate had a full and fair opportunity to litigate the issue of personal jurisdiction as to Mr. Cherry. Therefore, it is precluded from relitigating that issue which provides an independently sufficient basis for dismissal of this action.[12] For the reasons I have expressed, this case will be dismissed, without prejudice, for lack of subject matter jurisdiction[13] and, as an independently adequate ground, for lack of personal jurisdiction over Mr. Cherry. An Order implementing my ruling follows.

Date:  April 23, 2012                     _____/s/_____
                                          Ellen Lipton Hollander
                                          United States District Judge

_____

[11] Given that Allstate's response instead highlighted its pleading of *subject matter* jurisdiction, it may be that Allstate mistook Mr. Cherry's motion for one based on subject matter jurisdiction (although there was nothing unclear about the basis for Mr. Cherry's motion). It is worth noting, however, that Allstate's allegations as to subject matter jurisdiction were as deficient in *Cherry I* as they are here, although Judge Legg did not dismiss on that basis.

[12] As in *Cherry I*, if the claims against Mr. Cherry are dismissed, the Court is left with no case or controversy to adjudicate as to the remaining "parties in interest."

[13] The Court's dismissal on subject matter jurisdiction grounds should not be interpreted to preclude Allstate's refiling of suit on the basis of diversity (if properly pleaded) in another federal court that is possessed of personal jurisdiction over Mr. Cherry, or in an appropriate state court. As noted, the Court ordinarily would give the parties the opportunity to cure a mere defect in pleading as to subject matter jurisdiction; I have not done so here only because it would be an exercise in futility, in light of the collateral estoppel effect of *Cherry I*. Therefore, I recognize that Allstate has not had a full and fair opportunity to litigate the issue of diversity jurisdiction.